(No. 19933.— )

F. LANDON, Defendant in Error, *vs.* THE INDUSTRIAL COMMISSION *et al.*—(JOHN CLEARY, Plaintiff in Error.)

*Opinion filed October 25, 1930.*

52

ORR, J., dissenting.

SARSFIELD COLLINS, and JAMES R. QUINN, for plaintiff in error.

·BRUNDAGE & GORMAN, for defendant in error.

Mr. COMMISSIONER PARTLOW reported this opinion:

John Cleary filed his application with the Industrial Commission for an award against F. Landon, trading as the Landon Cartage Company, on account of personal injuries. The evidence was heard by an arbitrator, who made

an award in favor of the applicant, finding, among other things, that he had lost thirty-five per cent of the use of his right leg. The Industrial Commission, on review, confirmed the award. Upon *certiorari* proceedings in the circuit court of Cook county the award was set aside, and the case comes to this court on a writ of error.

Cleary was employed by Landon as a truck driver. On February 22, 1928, he and three other truck drivers were sent from Chicago to Elk Grove, their trucks being loaded with iron. The trucks were unloaded about five P. M. and started for Chicago. There was snow on the ground and the road was slippery. Cleary was driving the rear truck. Shortly after leaving Elk Grove his truck went into the ditch and he received an injury to his head. He testified that the claim for compensation was not based upon that injury. He secured a ride in an automobile and overtook the three drivers, who were ahead of him. He informed them of his accident and they went back and tried to get the truck out of the ditch but did not succeed. They all went to a near by filling station and telephoned to Landon for instructions. He told them to leave the truck in the ditch, put lights on it, and he would attend to it the next morning. He told the three drivers to come to the garage with their trucks and said that Cleary would be checked out and for him to go home. This conversation took place between six and seven o'clock P. M. The three drivers went back to the truck in the ditch, put lights on it, and Cleary remained at the oil station. Cleary had the option, if he saw fit, to ride into Chicago in any of these three trucks, but he told his fellow-servants that he did not intend to ride with them because he intended to beat them into Chicago. He testified that he had no money with him at that time, but there is no evidence that he made application to his fellow-drivers for money to take him into Chicago. The three trucks started on their return to Chicago and Cleary remained at the oil station. He had been there only a short

time when he secured a ride in an automobile going towards Chicago. He rode to within a mile of the end of the street car line, when the automobile in which he was riding turned down a side road. Cleary got out of the automobile and started to walk towards Chicago. He was soon overtaken by the three trucks. He testified that he called to the drivers, but they apparently did not hear him. He climbed into the back end of the last truck. He sat for a while in the back of the truck. There was a cab which protected the driver's seat. The truck was a right-hand drive. Cleary went up to the cab but did not call to the driver or ask him to stop and the driver did not know he was on the truck. He attempted to climb around into the cab on the left side, and in so doing his hand and foot slipped and he fell. The rear wheel passed over his right leg and it was permanently injured. The accident occurred about nine o'clock, on Lawrence avenue, which contains a street car line, but whether this place is within the city limits of Chicago or not is not clear from the evidence. The evidence shows that busses carrying passengers for hire run to and from the city of Chicago along the road between Chicago and Elk Grove and past the oil station where Cleary remained when the other trucks started back to Chicago. According to the custom and established practice in the business of Landon, when a driver took a truck outside of the city and for any reason was unable to get back into the city at night he was to call the office by telephone and notify Landon where he was. He was allowed a half hour, for which he was paid, in which to get back to the city, together with all expenses for transportation, and if it was necessary to stay out of the city all night Landon paid the necessary hotel bill.

The question in this case is whether the injury to Cleary arose out of and in the course of his employment and whether by his conduct he increased the dangers of his employment so as to deprive him of his right to compensation.

An injury must arise out of and in the course of the employment or it must be incident to the employment. (*Board of Education* v. *Industrial Com.* 321 Ill. 23.) The question as to whether or not an injury arises out of and in the course of the employment is one of fact. (*Porter Co.* v. *Industrial Com.* 301 Ill. 76.) It is the province of the Industrial Commission to draw reasonable inferences and conclusions from the evidentiary facts, and the findings of the commission upon questions of fact will not be set aside by this court unless they are manifestly against the weight of the evidence. (*Joyce-Watkins Co.* v. *Industrial Com.* 325 Ill. 378.) An employee is engaged in the course of his employment when the injury occurs within the period of his employment, at a place where he may reasonably be, and while he is reasonably fulfilling the duties of his employment or is engaged in doing something incidental to it. (*Dietzen Co.* v. *Industrial Board,* 279 Ill. 11.) An injury arises out of the employment when there is apparent to the rational mind, upon consideration of all the circumstances, a causal connection between the condition under which the work was required to be performed and the resulting injury. (*Schweiss* v. *Industrial Com.* 292 Ill. 90.) It is not essential to the right to receive compensation that the employee should have been working at the particular time when the injury was received. The employment is not limited to the exact moment when he begins work or when he quits work. (*Indian Hill Club* v. *Industrial Com.* 309 Ill. 271; *Wabash Railway Co.* v. *Industrial Com.* 294 id. 119.) A risk is incident to the employment when it belongs to or is connected with what a workman has to do in the fulfillment of his contract of service. It may be incident to the employment when it is either an ordinary risk directly connected with the employment, or an extraordinary risk which is only indirectly connected therewith. *Boorde* v. *Industrial Com.* 310 Ill. 62.

By the established practice of the business it was recognized by Landon that a truck driver outside of the city of Chicago with a disabled truck was in the course of his employment in returning to the city by whatever means of transportation was available. The half-hour's time allowed with pay was an arbitrary limitation, and if by reasonable diligence an employee did not make the trip into the city within that time it cannot be said that the employment ceased the moment the half hour expired. Nor is the fact that at the time of the accident the truck was within the city limits of the city of Chicago, if such is the fact, of any particular importance. At the time of the accident Cleary was still on his journey to his home from the place where his truck left the road, and he was to that extent in the course of his employment.

Landon insists that the danger incurred by Cleary which resulted in an injury was of his own choosing and was not connected with his employment and therefore the injury did not arise out of the employment. Whether an employee, when injured in going to or from his work, is in the line of his employment depends upon the facts and circumstances of the particular case, but as a general rule a man's employment does not begin until he reaches the place where he is to work and does not continue after he has left the place where he works. (*Dambold v. Industrial Com.* 323 Ill. 377.) The cases which hold that an employee injured while going to or coming from his work is within the course of his employment have been cases decided upon the ground that the employment required a particular route to be traveled or the route followed was the only one open to the employee. Where the employee is left to his own choice as to a method of reaching his place of employment or in going home and selects a dangerous route when he could have selected a safe one, his act in so doing is not incident to the employment. (*Lumaghi Coal Co. v. Industrial Com.* 318 Ill. 151; *Dambold v. Industrial Com. supra.*)

An employee must not unnecessarily increase the risk of injury to himself beyond that contemplated in his contract of service or choose an unnecessarily dangerous place for the doing of the act which is claimed to be incident to the employment. (*Weis Paper Mill Co.* v. *Industrial Com.* 293 Ill. 284.) Where an employee chooses to go to a dangerous place where his employment does not necessarily carry him, and thus increases a danger of his own choosing altogether outside of any reasonable requirement of his work, such risk is not incident to the employment. (*St. Louis and O'Fallon Coal Co.* v. *Industrial Com.* 325 Ill. 574; *Terminal Railroad Ass'n* v. *Industrial Com.* 309 id. 203; *Nelson Construction Co.* v. *Industrial Com.* 286 id. 632; *Lumaghi Coal Co.* v. *Industrial Com. supra.*) In *United Disposal Co.* v. *Industrial Com.* 291 Ill. 480, the employee was killed while going to his employment. He chose a route not provided by his employer but one which better suited his convenience. It was held that in so doing he voluntarily accepted unnecessary risk and that the injury which he received did not arise out of his employment.

When Landon ordered Cleary to go home no particular route was required and Cleary had a right to select any route he desired, provided in so doing he did not assume any unnecessary risk or danger. The most natural thing for him to have done was to ride with the other drivers, but he did not see fit to do so. He said he wanted to beat the trucks into Chicago. He might have gone home on the bus. In either of these ways he would not have assumed additional danger. After he got out of the auto in which he had ridden a part of the way home the trucks came along. He did not hail the drivers in such a way as to attract their attention and climbed onto the rear of the last truck. In so doing he assumed an additional danger because the road was covered with snow and was slippery. This additional danger, however, did not cause his injury. He safely boarded the truck. When he tried to get into

the cab he did not call to the driver or ask him to stop. The driver did not know that he was on the truck. He assumed the danger of attempting to climb along the left side of the cab and slipped, fell and was injured. This danger was one of his own selection, his employer had nothing to do with it, it was not incident to his employment, it did not arise out of his employment, and the circuit court correctly so held when it set aside the award.

The judgment is affirmed.

Per CURIAM: The foregoing opinion reported by Mr. Commissioner Partlow is hereby adopted as the opinion of the court, and judgment is entered in accordance therewith.

*Judgment affirmed.*

Mr. JUSTICE ORR, dissenting.