## INDEMNITY INS. CO. OF NORTH AMERI-CA v. WRIGHT et ux.

### No. 11704.

Court of Civil Appeals of Texas. Dallas.
Feb. 3, 1934.

Rehearing Denied March 10, 1934.

Seay, Malone & Lipscomb and Tarlton Stafford, all of Dallas, for appellant.

Houston & Johnson, of Dallas, for appellees.

LOONEY, Justice.

This case arose under the Workmen's Compensation Law (Vernon's Ann. Civ. St. art. 8306 et seq.). Ernest Wright and wife, Mary, sued the Indemnity Insurance Company of North America, insurer, in the nature of an appeal from the final decision of the Industrial Accident Board denying appellees compensation for the accidental death of Samuel Wright, their minor son, alleged to have resulted from carbon monoxide gas poisoning, received in the course of employment with Goodman Produce Company of Dallas.

No question is raised as to the sufficiency of the pleadings; the issues joined are indicated by the questions submitted to the jury, and the regularity of all preliminary proceedings being admitted, we are brought at once to incidents connected with the trial.

After overruling appellant's motion for an instructed verdict, the court submitted the case on the pertinent issues, and the findings of the jury, assigned as error, are that deceased, an employee of the Goodman Produce Company, received fatal injuries in the course of his employment; and that appellees would suffer a manifest hardship and injustice if a lump-sum payment should be denied. The other findings are not involved.

Appellant moved to set aside the verdict and for judgment non obstante veredicto; these being denied, the court rendered judgment against appellant on the jury findings for $3,047.88, apportioned two-thirds to ap-

pollees and one-third to their attorney, from which this appeal is prosecuted.

By appropriate assignments and propositions, appellant contends that the judgment should be reversed and rendered in its favor, because of the absence of evidence showing that, at the time of his injury, deceased was an employee of the Produce Company, within the meaning of the Workmen's Compensation Law; and because of the absence of evidence showing that he was injured in the course of his employment, in that the undisputed evidence shows that he departed from the course of any employment he may have had prior to being injured, and, in the alternative, appellant contends that the cause should be reversed and remanded, because of the court's error in rejecting the testimony of the witness Banks; because of the insufficiency of evidence to support findings, to the effect that deceased was an employee when injured, that he sustained injury in the course of his employment, and further because of the insufficiency of evidence to authorize submission of the question or the finding of the jury thereon in favor of a lump-sum payment.

The findings of the jury, although based upon conflicting evidence, are, in our opinion, fully sustained and are adopted as our conclusions of fact on the issues involved. The case, as made by evidence favorable to appellee, is to the effect that their son, Samuel Wright, a minor nineteen years of age, prior to his death, had worked for the Goodman Produce Company of Dallas more than a year, not continuously but irregularly and only when needed, as illustrated by the record of his services from March to December, 1930, inclusive. This record shows that he was paid $2.25 per day, and received for services in March $5.15, in April $24.85, in May $15, in June $3, in July $18.80, in August $47.50, in September $52.25, in October $16.50, in November $25.75, and in December $20.75. That on December 22, 1930, deceased, wearing an apron, was at work putting up shorts in the place of the Produce Company, that is, getting together in boxes fruits and vegetables ordered by customers ready for delivery the following morning; that about 2 or 2:30 a. m., December 23d, deceased remarked to another employee, "I am going in the box in a few minutes"; his purpose in going into the box is not disclosed, except by inference. The "box" referred to is an air-tight room kept by the Produce Company in which bananas are placed to be ripened, and a temperature necessary for that purpose was maintained by means of a gas stove. After going in the banana room, deceased did not return, but was found apparently asleep about an hour later, by Simon Goodman, who kicked the boy in the ribs, cursed him, saying: "Get up from there, you * * *, you know you are not supposed to work in the box, come out here." Replying, the boy said: "Yes sir, I will be out in a minute." However, he did not come out and was found by Goodman about 7 a. m., unconscious, with froth exuding from his mouth, nostrils, and eyes, and in this condition was immediately taken to a hospital, where he died two days later. The physician in charge, Dr. Dexter H. Hardin, testified that, when the boy reached the hospital, he was in an unconscious condition, caused by carbon monoxide gas poisoning; that he died of bilateral lobar pneumonia, the direct contributing cause being carbon monoxide gas poisoning; and that pneumonia may follow such poisoning.

In support of its several contentions, appellant cites many decisions, more or less in point, but these are of no special benefit in solving the problem, because, as we view the matter, this is essentially a fact case and the jury having found, upon sufficient evidence to warrant their findings, all disputed issues in favor of appellees, we think their verdict was properly approved, and that the trial court committed no error in rendering the judgment appealed from.

■ Appellant insists, however, that when deceased entered the banana room, he departed from the course of any employment he may have had, and further that, in failing to leave the room, in obedience to the command of his employer, he became a trespasser and departed from his employment; therefore, appellant is not liable, as insurer, for the injury sustained under these circumstances.

The evidence tends to show, and justifies the belief, that deceased entered the room in quest of bananas to fill orders of customers, and in doing so was in the course of his employment. Evidently the banana room was permeated with the colorless, inodorous gas, and on entering the boy must have been immediately stricken, and rendered semiconscious, and was in that condition when discovered and ordered out by Mr. Goodman. If simply asleep and in possession of his normal faculties, the negro, in our opinion, would have left the room immediately on being kicked, cursed, and ordered out by his white employer; and the fact that he did not do so, after being subjected to the unusually rough treatment, indicates strongly that he

was asphyxiated and only partially aroused when kicked and cursed by Goodman.

■ The contention that the negro boy entered the banana room for sleep, thus departing from his employment, is answered by evidence to the effect that employees of the Produce Company were permitted, while on duty, to nap on the premises; so, if in fact deceased did enter the room for the purpose of taking a nap (in view of the evidence, the jury was warranted in so believing), that fact would not, in our opinion, constitute a departure from the course of his employment. See cases in point on principle, Malley v. Union Ind. Co. (Tex. Com. App.) 12 S.W.(2d) 1002; Southern Surety Co. v. Shook (Tex. Civ. App.) 44 S.W.(2d) 425; Parker v. Royalty Ind. Co. (Tex. Civ. App.) 59 S.W.(2d) 243, 246.

■ Appellant further contends that the evidence neither required the submission of the issues nor justified the finding that a manifest injustice and hardship would result to appellees, unless the compensation to which they are entitled is paid in a lump sum.

The evidence bearing upon this question is, in effect, that Ernest Wright, father of deceased, was 42 years of age, uneducated, inured to hard labor, was familiar with farming, had been without regular employment for about two years, his wife being employed only at washing and ironing. Appellees expressed the desire and purpose, if awarded a lump sum, to purchase a small farm and run a woodyard. Under prevailing economic conditions, we think they would be enabled, with the amount awarded them, to purchase and pay for a small farm, and that, under the circumstances, to deprive them of the opportunity of acquiring a home and becoming self-sustaining would constitute a manifest injustice and hardship, within the meaning of the statute.

■ Lump-sum payments have been permitted to enable a beneficiary to invest in a business of his own. See Consolidated, etc., v. Saxon (Tex. Com. App.) 265 S. W. 143, 146; Texas Employers' Ins. Ass'n v. Herring (Tex. Civ. App.) 269 S. W. 249, 253; Herzing v. Texas Employers', etc. (Tex. Com. App.) 17 S.W.(2d) 1046; Gulf Cas. Co. v. Garner (Tex. Civ. App.) 48 S.W.(2d) 746, 748.

■ The question of allowing or refusing a lump-sum settlement is largely a matter of discretion with the trial court and, unless an abuse of discretion is shown, its action should be approved. In Georgia Casualty Co. v. Little (Tex. Civ. App.) 281 S. W. 1092, 1095, the Austin court, through Judge Baugh, said: "The question of a lump sum payment is a matter addressed largely to the discretion of the trial court, and in the absence of abuse of such discretion his judgment should be sustained," citing Texas Employers', etc., v. Boudreaux (Tex. Civ. App.) 238 S. W. 697; Texas Employers', etc., v. Downing (Tex. Civ. App.) 218 S. W. 112.

■■ The proposition is urged that, in view of the testimony of several witnesses for appellees, to the effect that they saw deceased working on the premises and in the business establishment of Goodman Produce Company on the night of December 22d, and early morning of December 23d (no direct evidence showing that he was required, by any one in authority to work at the time), that it was error for the trial court to refuse to permit appellant to show by C. G. Banks, bookkeeper for the Produce Company, that deceased "was not supposed to work that night or morning," the contention being that, if he was not supposed to work at that time, his act in doing so was that of a volunteer, and that appellant, as compensation insurer, would not be liable for an injury sustained under the circumstances.

We do not think the court erred in excluding the testimony of Bookkeeper Banks. After its ruling the following colloquy ensued between the court and counsel for appellant, which clearly shows that appellant was not cut off by any ruling of the court from introducing competent evidence to prove the fact sought to be established by the rejected evidence:

"The Court: Here is the way the matter strikes the court, gentlemen. It don't make any difference as to who was to be there. The issue is who was. The question is was this man working there that night? It makes no difference what he was supposed—

"Mr. Stafford: If he came there and worked when he was not supposed to work, he was a mere volunteer and we are not liable.

"The Court: If he was working there?

"Mr. Stafford: Suppose I walked in there as a mere volunteer?

"The Court: Is there any suggestion here that anybody walked in and volunteered? I will let you go into it very fully how come him there.

"Mr. Stafford: The question is whether or not he was required to work that night.

"The Court: The only question is whether he was employed that night.

"Mr. Stafford: Yes. If he went in there and worked as a mere volunteer, then we are not in any way liable.

"The Court: Of course, if you show he worked there as a volunteer unquestionably you are right about that.

"Mr. Stafford: Therefore, I have the right to show who was on duty that night.

"The Court: I will let you show who was on duty, but not who was supposed to be on.

"Mr. Stafford: Note our exception."

The episode closed as above shown. But aside from this, the fact sought to be established by the rejected evidence was testified to by Simon Goodman, the employer, rendering harmless the error, if error was committed by the court in its ruling. Finding no reversible error, the judgment of the court below is affirmed.

Affirmed.