### GRACE v. TANNEHILL et al.
### No. 6102.

Circuit Court of Appeals, Fifth Circuit.
Jan. 9, 1932.

J. M. Wagstaff, Ellis Douthit, R. M. Wagstaff, and E. L. Harwell, all of Abilene, Tex., and Richard E. Sloan, T. G. McKesson and Greig Scott, all of Phœnix, Ariz., for appellant.

William E. Allen, of Fort Worth, Tex., and E. C. Iden, of Albuquerque, N. M., for appellees.

Before BRYAN, FOSTER, and SIBLEY, Circuit Judges.

FOSTER, Circuit Judge.

Appellant, Robert E. Grace, brought a suit in equity against appellees L. B. Tannehill, the Tannehill Oil Company, a corporation, M. R. Kiser, Ralph G. Fleming, and H. B. Hibbard, to establish his ownership of a one-sixth interest in certain oil leases on lands in Texas, in the vicinity of. Albany, and to have the property impressed with a trust in his favor. He alleged a partnership agreement between Tannehill, Kiser, Fleming, and himself. The Tannehill Oil Company was made defendant because the property stands in its name, and Hibbard was included as having a slight interest in the property. From an adverse judgment, this appeal is prosecuted.

It is contended by appellant that he, Tannehill, Fleming, and Kiser were engaged in a joint venture or mining partnership; that the agreement as to such a partnership need not be in writing and may be proved by parol, and the attendant circumstances. It may be conceded that such a partnership may rest in parol but, notwithstanding its informal character, it is necessary that a definite understanding, either tacit or express, be shown by a clear preponderance of the evidence, with reasonable certainty. The case therefore presents purely a question of fact.

The record is voluminous, and there is considerable conflict in the testimony. However, the salient facts, material to a decision, may be somewhat briefly reviewed. It appears that Tannehill is an experienced oil operator, apparently of considerable means, and president of the Tannehill Company, and with some skill in locating oil deposits. Kiser and Fleming are also experienced oil men and drillers. Grace was in the real estate business at Phœnix, Ariz., with no experience in the discovery and production of oil, but had had a few transactions in the sale of oil leases. Tannehill had been engaged in drilling an oil well in the vicinity of Phœnix, Ariz. Kiser and Fleming were employed in that venture. It proved unsuccessful. Grace suggested to Tannehill that they with Kiser and Fleming might go

to Texas and other states and look for some shallow territory. This was agreed to, and all four of them eventually went to Texas in the vicinity of Albany. Each paid his own expenses. There a lease for some 400 acres of land, known as the Wood tract, was secured; the consideration being the drilling of a well. Other leases or options on land in the vicinity were secured. The final say as to acquiring these leases was left to Tannehill because of his greater experience. Grace was active in securing this lease and options on other parcels of land in the vicinity. A well was drilled on the Wood tract by contract at a cost of about $7,000. Tannehill put up one-half of this amount, and Kiser and Fleming each one-fourth, and contributed their services free in superintending the drilling. The well was practically a dry hole, although it produced a little oil, but not in paying quantities. After the well was started, Grace went back to Phœnix. He thereafter sold some of the acreage which had been acquired and derived personal profit from these transactions, but did nothing else to further the general interests. He did not go back to Albany until after the well had proven unsuccessful.

Grace's claim to a partnership rests upon a conversation he alleges he had with Tannehill in Phœnix before the party was formed. In substance, he testified that he suggested that they go to New Mexico or Texas or Oklahoma to shallow oil fields; that he told Tannehill he could block up some leases and help to sell leases; that Tannehill knew how to locate oil; that he would get Kiser and Fleming to go along; that they had no money to go into the oil business and if Tannehill would finance the project the other three would work without any salary; that Tannehill would get his money back in the first earnings and would have a one-half interest and he, Kiser, and Fleming would each have a one-sixth interest; that Tannehill agreed to this proposition and said he would finance it; that he afterwards communicated this conversation to Kiser and Fleming, and they agreed to go with the party on that basis. It is not denied by any of the alleged partners that Grace suggested the trip. Tannehill denies that he made any agreement to finance the project entirely, and Kiser and Fleming testified that Grace did not communicate that fact to them. Tannehill testified to a conversation at Albany between himself, Grace, Kiser, and Fleming, in which it was agreed that he would put up one-half of the money to drill the well, and the other three would put up the oth-

er half. Kiser testified that he told Grace he and Fleming would carry him, and Grace made no protest. Grace denies this proposition was made or that he agreed to it.

After the first well proved unsuccessful, other wells were drilled on the leases that Grace had been active in securing, and, after the expenditure of considerable money, approximately $100,000, the venture proved highly successful. However, Grace waited until some six years after the success of the enterprise was fully assured before bringing suit. There is considerable correspondence between the parties in the record, but it adds nothing to the above-quoted testimony.

The District Court reviewed the facts in an extensive oral opinion, a transcript of which is in the record, and reached the conclusion that Tannehill, Fleming, and Kiser had treated Grace with the utmost good faith and were willing that he should have something for his services, or a one-sixth interest if he advanced his share of the expenses, which he never did; that he had declined to accept an offer made by Kiser and Fleming to carry him in the drilling of the first well; that it was exceedingly improbable that these three experienced oil men would agree to give him the one-sixth interest in the whole transaction for the services he had rendered in securing the leases; that he abandoned the enterprise; and that on the whole case appellant had failed to sustain the burden of proving the contract.

None of the witnesses is impeached. It is not probable that Tannehill would have agreed in Phœnix to finance an enterprise so uncertain and speculative as that upon which the party was about to embark. Of course, all the parties expected to have an interest, if the enterprise proved successful, but it is reasonably certain that no definite agreement was attempted to be made until it was determined to drill the first well. It was immaterial to Tannehill whether Grace or Kiser had each a one-fourth interest or that they with Grace should each have a one-sixth interest, as his interest would remain the same. The parties were friendly enough when they started, and no doubt were still friendly when the Wood's lease was acquired. It was equitable for each to contribute his share of the expenses in addition to services rendered. It is clear that Grace did not acquiesce in this agreement, as it was testified to by the others and was in fact carried out. Having declined to assume any responsibility for a possible failure, Grace was sufficiently compensated for his services by the profit he

made on the sale of leases. The District Court saw and heard the witnesses and was in the best position to resolve the conflict in the testimony. His opinion is entitled to great weight. We concur in the conclusions reached by the District Court.

The record presents no reversible error. Affirmed.